UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| ADMINISTRATIVE SUBPOENA | ) | |
| DUCES TECUM SERVED UPON | ) | |
| MISSOURI BAPTIST MEDICAL | ) | Case No.: |
| CENTER  ON SEPTEMBER 15, 2022 | ) | |
| COMPELLING PRODUCTION OF | ) | |
| DOCUMENTS AND TANGLIBLE | ) | |
| ITEMS CONCERNING DR. ASIM ALI. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH OR MODIFY AND FOR ENTRY OF A PROTECTIVE ORDER OF MISSOURI BAPTIST MEDICAL CENTER

COMES NOW, Missouri Baptist Medical Center ("MBMC"), by and through the undersigned counsel, Baker Sterchi Cowden & Rice LLC, and in support of its Motion to Quash and for Entry of a Protective Order, states as follows:

### INTRODUCTION

Pursuant to 18 U.S.C. 3486(a)(5)[1] MBMC moves this Court to set aside an administrative subpoena *duces tecum* issued under the authority of 18 U.S.C. § 3486 and served upon MBMC on September 15, 2022.  The subpoena commands production of HIPAA-regulated information and documents, including patient medical records and other confidential and privileged materials, on September 30, 2022.  (See Subpoena, attached to Motion to Quash as Exhibit A).

The investigation target of the subpoenas is purportedly Dr. Asim Ali and not MBMC. MBMC is currently unaware whether the government is pursuing similar requests for

---

[1] 18 U.S.C. § 3486(a)(5) provides that "[a] t any time before the return date specified in the summons, the person or entity summoned may, in the United States district court for the district in which that person or entity does business or resides, petition for an order modifying or setting aside the summons . . ."

information directly from Dr. Asim or from a third-party.  MBMC contends that the subpoena

is vague and overbroad, unduly burdensome, especially for a non-party to the investigation,

violates Constitutional guarantees and Federal Rules, seeks publicly available information,

seeks confidential patient information protected from disclosure under the Health Insurance

Portability and Accountability Act of 1996 (HIPAA), and privileged information protected by

the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the

insured-insurer, and/or any other applicable privileges and exemptions.

The subpoena states that it was "[i]ssued under authority of" 18 U.S.C. § 3486, and that

production of the documents and materials listed on the Attachment is "necessary in the

performance of the responsibility of the U.S. Department of Justice to investigate Federal

health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to

violate: 18 U.S.C. § 669, 1035, 1347, or 1518; and 18 U.S.C. § 287, 371, 664, 666, 1001, 1027,

1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program

(defined in 18 U.S.C. § 24(b))."  The subpoena states that the "Custodian of Records" for

MBMC is "required to bring with [him/her] and produce" documents and materials listed on the

Attachment.

The Attachment specifies the eight-paragraph list below identifying documents and

materials as being subject to the demand for production.  MBMC's Objections are inserted after

each paragraph.

## Subpoenaed Documents

Please produce the following documents:

1. Contracts, agreements, or other documents reflecting understandings between
   Missouri Baptist Medical Center and Dr. Asim Ali, date of birth 12/01/1970, and

2

social security number ending in 4372 ("Dr. Ali") concerning Dr. Ali's practice at Missouri Baptist Medical Center.

**RESPONSE:** **Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.  Further, this request may seek privileged information and documents protected from disclosure under the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

2. Documents that reflect, refer, or relate to lawsuits or complaints by patients, family members of patients, or other patient representatives against Dr. Ali and/or Missouri Baptist Medical Center concerning the care or services provided by Dr. Ali. Documents responsive to this request should include, but not be limited to, the names, dates of birth, Social Security account numbers, and last known addresses and telephone numbers of the patients referenced in the lawsuits or complaints.

**RESPONSE:**  **Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.  Further, this request seeks publicly available information and documents, confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

3. Documents that reflect, refer, or relate to complaints made against Dr. Ali by physicians, staff, and/or employees of Missouri Baptist Medical Center or any other individuals or entities.

**RESPONSE:** **Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.  Further, this request seeks confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

4. Documents, including emails, that refer or relate to billing and reimbursement issues concerning the care or services provided by Dr. Ali.

3

**RESPONSE: Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.   Further, this request seeks confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

5.  Documents, including emails, that refer or relate to the quality of care or services provided by Dr. Ali, as measured by credentialling requirements, Quality Indicator assessments, post-surgery infection rates, post-surgery complications, or any other criteria used by Missouri Baptist Medical Center to evaluate and assess physicians.

**RESPONSE: Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.   Further, this request seeks confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

6.  Documents that reflect, relate, or refer to peer reviews completed on Dr. Ali.

**RESPONSE: Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.   Further, this request seeks confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

7.  Minutes of meetings, or portions thereof, where Dr. Ali's quality of care, coding and billing, and compensation for professional services were discussed by Missouri Baptist Center staff or agents who were responsible for monitoring, supervising, or evaluating Dr. Ali's actions at Missouri Baptist Medical Center.

4

**RESPONSE:** **Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.  Further, this request seeks confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

8.  Documents that reflect, relate, or refer to information, guidance, or training provided to Dr. Ali and other employees of Missouri Baptist Medical Center concerning (a) requirements for the proper prescribing of controlled substances to patients and (b) the Stark law, and (c) federal and state law concerning the kickbacks for patient referrals and services.

**RESPONSE:** **Objection.  This request is vague and overbroad, not reasonably tailored to the subject of the government's investigation and violates Fourth Amendment guarantees.  Further, this request may seek privileged information and documents protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the work product doctrine, the insured-insurer privilege, and/or any other applicable privileges and exemptions.**

The subpoena provided the following "Definitions" and "Instructions" with regard to production, requirements and compulsory statements in order to perfect compliance with each subpoena, with Objections from MBMC inserted thereafter below:

Definitions

A.      This subpoena is directed to the Custodian of Records Missouri Baptist Medical Center located at 3015 N. Ballas Road, St. Louis, MO 63131.

B.      "Communication(s)" is used in the broadest possible sense and means any transmission or exchange of information orally or in writing. This definition includes email, SMS messages, text messages, instant messages, and social media.

C.      "Document" and "documents" are used in the broadest possible sense and include, but are not limited to, any hard copy or electronically store information and emails. This

definition includes any attachments, enclosures, or other matter affixed to or incorporated by reference within any document responsive to this subpoena.

D.      The terms "any," "all," "and," or "or" should be read in the conjunctive and disjunctive to provide the broadest possible meaning of to each subpoena request.

E.      The singular and plural forms of any word shall be construed interchangeably to bring within the scope of this subpoena any document which might otherwise be construed as outside its scope.

<u>Instructions</u>

A.      Unless otherwise stated, this subpoena seeks documents dated from January 1, 2014, to the date of this subpoena.

B.      This subpoena is continuing in nature. If the subpoena recipient becomes aware of or acquires possession, custody, or control of additional documents that are responsive to this subpoena, the subpoena recipient shall promptly produce such additional documents.

C.      All documents provided in response to this subpoena are to include all marginalia and post-it notes, as well as any attachments referred to or incorporated by the documents.

D.      This subpoena applies to all documents and communications in the subpoena recipient's possession, custody, or control regardless of their location, including without limitation any responsive documents in the custody or control of your information technology agents and contractors, whether in-house or externally outsourced.

E.      If no documents exist that are responsive to a specific document request, a written statement to that effect shall be provided at the time of production.

F.      Where a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced, please provide a

6

privilege log wherein you refer to the specific paragraph of this subpoena to which the document is responsive and identify the type of document being withheld (*e.g.*, letter, memorandum, handwritten notes, marginalia, etc.), a description of its contents, its author(s), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the Government, and potentially the Court, to assess the claim of privilege.

        G.     This subpoena seeks un-redacted documents that may contain protected individually identifiable patient health information ("PHI"). The information sought in the subpoena is relevant to a legitimate and ongoing investigation by the U.S. Department of Justice, a health oversight agency, of federal health offenses involving health care benefit programs.

**RESPONSE:**  **Objection.  These "Definitions" and "Instructions" are vague and overbroad in time and scope, including the fact that the subpoena seeks documents over a span of almost nine years, as well as confidential patient information and documents protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  See further objections below.**

       The subpoena specified the place of appearance as the U.S. Attorney's Office in St. Louis.  Each subpoena set the time for appearance as 10 A.M. on September 30, 2022. The parties and counsel agreed to an extension of time, through October 14, 2022, for MBMC to respond to the subpoenas, without waiving defenses.  (See Emails, attached to Motion to Quash as Exhibit B)  Thus, the Motion and this Memo in Support are timely filed pursuant to agreement of the parties and counsel.

## LEGAL STANDARD

### I.    Constitutional Protections Under the Fourth Amendment

       The Fourth Amendment embodies a promise that "[t]he right of the people to be secure in their persons, houses, *papers*, and effects, against unreasonable searches and seizures, shall not

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV (emphasis added). The Fourth Amendment protects a subpoena-target from an abusive subpoena *duces tecum.* For example, "[t]he Fourth Amendment provides protection against a grand jury subpoena *duces tecum* too sweeping in its terms 'to be regarded as reasonable'." *United States v. Dionisio*, 410 U.S. 1, 11 (1973) (quoting *Hale v. Henkel*, 201 U.S. 43, 76 (1906)). *See also Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208 (1946) (explaining that with regard to the production of corporate records in response to a subpoena, the Fourth Amendment protects against abuse by way of too much indefiniteness or breadth in the information sought).

Administrative subpoenas do not grant the government "unfettered authority to cast about for potential wrongdoing[.]" *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994). Put differently, they do not provide the government "unrestricted license to rummage through . . . office files . . . in the hope of perchance discovering information" that may assist it. *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973). Rather, the government's subpoena power is cabined by the Fourth Amendment's protection against unreasonable searches and seizures. See *In re Subpoena Duces Tecum*, 228 F.3d 341, 347 (4th Cir. 2000). Indeed, "[b]ecause a subpoena duces tecum leads to the *compulsory* production of private papers, a person served with a subpoena duces tecum is entitled to the Fourth Amendment's protection against unreasonableness." *Id*. (quotations omitted) (emphasis in original). It is the unquestioned role of the courts to enforce this reasonableness standard and the constitutional "value of constraining governmental power" that underlies it. *Id*. at 349.

To be reasonable under the Fourth Amendment, an administrative subpoena "must be (1)

authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive[.]" *Id.* at 349.  Under this standard, "[a] subpoena will be disallowed if it is far too sweeping in its terms to be regarded as reasonable . . . or if it is not suitably specific and properly limited in scope." *Id.* (citations and quotations omitted).  "[F]ishing expeditions" are flatly prohibited. *Id.* (quoting *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 299 (1991)). Calls for "excessive" productions are as well. *Id.* (citing *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 209 (1946)).

Subpoenas duces tecum have been quashed when they are overbroad in their requests, when they seek irrelevant or privileged matters, or if they constitute an unreasonable search and seizure within the prohibition of the Fourth Amendment. *In re Grand Jury Subpoena*, 96 F.R.D. 406, 407 (D.P.R. 1982).  Pursuant to the Fourth Amendment, a subpoena duces tecum may be quashed or modified "if compliance would be unreasonable or oppressive." *Stern v. United States Dist. Court for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000).  The initial burden of establishing the defective character of the Subpoenas rests on the party moving to quash. *Id.* However, the proponent of a subpoena has the burden of showing the subpoena is not unreasonable or oppressive by establishing "relevancy, admissibility, and specificity." *Id.*; *see also, e.g., United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996) ("In order to obtain judicial backing the agency must prove that (1) the subpoena is issued for a congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena.") (footnote omitted); *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir .2000) (citing *United*

9

*States v. Nixon*, 418 U.S. 683 (1974) (explaining that in order to access documents via subpoena, "[t]he moving party must show that the subpoenaed document (1) is relevant, (2) is admissible, and (3) has been requested with adequate specificity.") (quoting *United States v.* Arditti, 955 F.2d 331, 346 (5th Cir. 1992) ("Thus, 'these specificity and relevance requirements require more than the title of a document and conjecture as to its contents.'").

The Eighth Circuit has identified the following standard to be applied by a trial court when deciding a motion to quash:

> "On timely a motion, a district court shall quash or modify a subpoena of the subpoena fails to allow reasonable time for compliance, requires a witness who is not a party to travel more than 100 miles, requires disclosure of privileged or protected matter, or subjects a person to undue burden. A subpoena must also seek relevant information."

*Pointer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005).

## II.   Rule 45 Standard.

Rule 45 addresses subpoenas and authorizes a district court to quash or modify a subpoena when the subpoena requires disclosure of privileged or other protected matters, or when it subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A) (iii)-(iv). A trial court has especially wide discretion in deciding to quash a subpoena served on a non-party. *Peoples Nat'l Bank, N.A. v. Mehlman*, 2016 U.S. Dist. LEXIS 74234, at *6 (E.D. Mo. June 7, 2016); *Swann v. Calahan*, 2011 U.S. Dist. LEXIS 90563 at *1 (E.D. Mo. Aug. 15, 2011). "Regarding the burden of disclosure…'[c]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *In re NCAA*, 2012 U.S. Dist. LEXIS 147174 at *8 (quoting *Misc. Docket Matter 1 v. Misc. Docket Matter 2*, 197 F.3d 922, 926-27 (8th Cir. 1999)). While non-party discovery *may* be undertaken in certain circumstances, it is entirely improper when it unduly burdens that non-party. *See*

10

*EnviroPak Corp. v. Zenfinity Capital, LLC*, 2014 U.S. Dist. LEXIS 132499, at *9-10 (E.D. Mo. 2014) (where the information may be obtained via a request to a party, a non-party should not be burdened for the same); *see Cantrell v. US Bioservices Corp.*, 2009 U.S. Dist. LEXIS 37344, at *4 (W.D. Mo. App. 21, 2009) (enforcement of a subpoena would impose an undue burden on a non-party where the cost and resources required to produce the information would be substantial and the documents requested could be first sought from a party).

III.    **Protective Orders**

        This Court has broad discretion to decide whether, and to what extent, a protective order should be issued.  *Roberts* v. *Shawnee Mission Ford, Inc.,* 352 F.3d 358, 362 (8th Cir. 2003). For "good cause," the Court may enter a protective order forbidding certain discovery.  Fed. R. Civ. P. 26(c). "The party moving for the protective order has the burden to demonstrate good cause for issuance of the order."  *Suljanovic v. State Farm Mut. Auto. Ins. Co.,* No. 4:20-CV-534 RLW, 2021 U.S. Dist. LEXIS 30285, at *5 (E.D. Mo. Feb. 18, 2021). Good cause exists where a protective order would prevent annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  To show good cause, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted."  *Id.*

<u>**ARGUMENT**</u>

        It is evident from a plain reading of the subpoena that the government's demands for production are oppressive and overbroad.  Although they are ultimately subject to the strictures of the Constitution, administrative subpoenas issued under the authority of 18 U.S.C. § 3486 are generated by an Assistant United States Attorney without any judicial oversight unless a target of the subpoena challenges the government's exercise of discretion.  By federal statute, the government cannot require MBMC to produce documents or materials which "would be

11

protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States."  18 U.S.C. § 3486(a)(7).  To the extent that it finds that any of the information/documents sought by the subpoena is/are protected from production, this Court is empowered to issue an order modifying or setting aside the subpoena and a protective order limiting the disclosure and use of any documents to be produced pursuant to a subpoena.

**I.    The subpoena constitutes an unreasonable search and seizure within the prohibition of the Fourth Amendment and Rule 45 in that the requests are vague and overbroad in time and scope, unduly burdensome, and the government has not established relevancy, admissibility, and specificity of the information/documents sought.**

The overbreadth of the subpoenas is reason enough to set them aside.  "Specificity is the hurdle on which many subpoena requests stumble."  *United States v. Jackson*, 155 F.R.D. 664, 667 (D. Kansas May 6, 1994) (deciding the Government's challenge to subpoenas requested by defendant).  In *Bowman Dairy Co. v. United States*, the Supreme Court rejected a subpoena's "catch-all provision, [which is] not intended to produce evidentiary materials but is merely a fishing expedition to see what may turn up.  The clause is therefore invalid." *Bowman Dairy Co.*, 341 U.S. 214, 221 (1951).  Specificity "serves to prevent the subpoena from being converted into a license for what the Supreme Court . . . decried as a 'fishing expedition to see what may turn up.'"  *Jackson*, 155 F.R.D. at 667, quoting *Bowman*, 341 U.S. at 221.  "The relevance and specificity elements 'require more than the title of a document and conjecture as to its contents,' and a subpoena should not be issued based upon a party's "mere hope" that it will turn up favorable evidence." *United States v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013) (quoting *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996). "If the [proponent of the subpoena] cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will

12

turn up, this is a sure sign that the subpoena is being misused." *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S. D. Fla. 1991).

In *Hale*, *supra*, the Supreme Court applied a Fourth Amendment "reasonableness" test when holding that the breadth of a subpoena *duces tecum* was unconstitutional, as follows:

> Applying the test of reasonableness to the present case, we think the subpoena *duces tecum* is far too sweeping in its terms to be regarded as reasonable.  It does not require the production of a single contract, or of contracts with a particular corporation, or a limited number of documents, but all understandings, contracts, or correspondence between the MacAndrews & Forbes Company, and no less than six different companies. . . .
>
> [T]his mass of material . . . is not shown to be necessary in the prosecution of this case, and is clearly in violation of the general principle of law with regard to the particularity required in the description of documents necessary to a search warrant or subpoena.  Doubtless many, if not all, of these documents may ultimately be required, but some necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of these companies with the other companies implicated, or some evidence of the materiality produced, to justify an order for the production of such a mass of papers.

*Hale*, 201 U.S. at 76.

In *Jackson*, the District Court found that the fact that the subpoenas employed such terms as "any and all documents" or "including, but not limited to" constituted "indicia of a fishing expedition.  The subpoenas aim for what appears to be a broad array and large number of documents.  The subpoenas, in several instances, seek entire files, all correspondence, and all related records.  This is more indicia of a fishing expedition.  Such requests fail to delineate the particular documents or kinds of documents sought from these files and records."  *Jackson*, 155 F.R.D. at 668.

In *Schwimmer v. United States*, the 8th Circuit refused to uphold a subpoena calling for an attorney's files, records, diaries, log books, correspondence, and "other documents" covering a ten-year period.  *Schwimmer*, 232 F.2d 855, 861-2 (8th Cir. 1956).  The court

13

explained that the subpoena's language "was as broad as it could possibly be made" and sought "en masse production." *Id.* at 861.  Thus, enforcement of the government's subpoena "would dominatingly constitute a general fishing expedition, and that the compelled production of all the files and papers would thus amount in the situation to an unreasonable search and seizure." *Id.* at 862.

The subpoena here plainly violates the Fourth Amendment, which requires an administrative subpoena to be "suitably specific and properly limited in scope" and prohibits the government from "rummag[ing] through . . . office files . . . in the hope of perchance discovering information" that may assist it.  *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973); see also *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000).  All but one of the eight categories of documents and materials for which production is demanded (Paragraph No. 7) uses phrases "documents that refer or relate to," "reflect, refer, or relate to," or "reflecting" some issue or series of issues, and one uses the phrase "include[ing], but not [] limited to" or "including" without any stated limitation (Paragraph Nos. 2, 4, 5).  (See Ex. A). This is the functional equivalent of an overbroad "any and all records" request without the government establishing relevancy, admissibility, and specificity of the information/documents sought.

The government's requests provide scarce guidance beyond identifying the target of the investigation – Dr. Ali.  For example, Paragraph No. 1 seeks "contracts, agreements, or other documents" "concerning Dr. Ali's practice" at the hospital, without limitation or specificity as to the document type or subject matter sought.  Paragraph Nos. 2 and 3 seek documents that "reflect, refer, or relate to lawsuits or complaints" concerning Dr. Ali, without limitation or specifying the types of documents sought, the nature or subject matter of the complaints against

14

Dr. Ali, or the documents' potential relevance to the investigation.  Further, lawsuit information should be publicly available and thus unduly burdensome for MBMC to procure and produce it.

Paragraph No. 4 seeks documents that "refer or relate to billing and reimbursement issues" concerning Dr. Ali's care without limitation or specificity as to the nature of the issues. Further, the government's request for billing information is better directed to Dr. Ali and his practice group and not to MBMC.  Paragraph No. 5 seeks documents "that refer or relate to the quality of care or services provided by Dr. Ali, without limitation or specificity as to the nature of the services.  Paragraph No. 6 seeks documents that "reflect, relate, or refer to peer reviews completed on Dr. Ali, without specificity as to the nature of the peer review activity.  Paragraph No. 7 is overbroad in that it seeks any meeting minutes concerning Dr. Ali concerning "quality of care, coding and billing, and compensation."  "Quality of care" is vague and overbroad and not clearly tied to the investigation scope into Dr. Ali.  Paragraph No. 8 is overbroad in that it seeks documents that "reflect, related, or refer to information, guidance, or training," both to Dr. Ali and other unidentified staff, about three separate topics.

Merely identifying the provider and investigation target is insufficient – the government's requests should be tied to specific types of documents with the scope tailored to the scope of the investigation.  Purely hypothetically speaking, how would complaints about a provider concerning, for example, hospital parking or the use of the physician lounge further a criminal investigation into alleged unlawful patient billing practices and prescribing practices?  The answer is simple – they would not, and the scope of each of the government's requests is overbroad.

The "Instructions" also make the requests overbroad in that they seek documents spanning almost nine years.  Considering the overbreadth and lack of specificity in the

15

government's requests, the Court should quash the subpoena or require the government to modify it.  At a minimum, the government should be required to amend its subpoena to narrow the requests to specific types of documents concerning topics narrowly tailored to their stated purpose – a criminal investigation into Dr. Ali's patient billing practices and prescribing practices.

**II.  The subpoena constitutes an unreasonable search and seizure within the prohibition of the Fourth Amendment and Rule 45 in that the requests seek confidential and/or privileged information/documents protected from discovery.**

<u>HIPAA and De-Identification</u>

Many of the subpoena requests seek confidential patient information protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA).  See Objections above.  45 C.F.R. § 164.512(f)(1)(ii)(C) governs the disclosure of protected health information in response to administrative subpoenas and provides the following requirements and burden on the government:

> *(1)* The information sought is relevant and material to a legitimate law enforcement inquiry;
> *(2)* The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
> *(3)* De-identified information could not reasonably be used.

The government has made no showing here that this information is relevant and material, that it is reasonably limited in scope, or that de-identified information cannot reasonably be used, at least as a first step, and limit the disclosure of protected health information solely to that which is relevant and material to a legitimate investigatory purpose.  Paragraph Nos. 2-7 seek documents that may include protected patient health information that may not be necessary to disclose in this forum, and that should not be disclosed absent a reasonable protective order.

16

For the above reasons, the Court should set aside the subpoena.  Only in the event the Court does not set aside the subpoena, MBMC requests the Court enter an order permitting it to de-identify and redact any protected health and confidential patient information within any document responsive to any of the numbered categories of documents sought in the subpoena and for a protective order with reasonable limitations on the disclosure and use of any documents produced pursuant to the subpoenas, as discussed further, *infra*.

<u>Peer Review Privilege</u>

Section 537.035 of the Missouri Revised Statutes provides that "interviews, memoranda, proceedings, findings, deliberations, reports, and minutes of peer review committees, or the existence of the same, concerning the health care provided any patient are privileged and shall not be subject to discovery . . . ."  Mo. Rev. Stat. § 537.035.4.  Federal Rule of Evidence 501 directs that, unless otherwise required by the Constitution, an act of Congress, or in rules prescribed by the Supreme Court pursuant to statutory authority, privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."  The purpose of Rule 501 is to "provide the courts with the flexibility to develop rules of privilege on a case-by case basis." *Trammel v. United States*, 445 U.S. 40, 47 (1980), quoting 120 Cong. Rec. 40891 (1974).  Rule 501 thus provides federal courts with a measure of flexibility in crafting privilege law.  The Eighth Circuit Court of Appeals has recognized the Court's flexibility in interpreting privileges, explaining that the Supreme Court has interpreted privileges "in light of reason and experience" on a case-by-case basis, even when it leads to a different result than that which was contained in its proposed privilege rules. *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 915 n.3 (8th Cir. 1997) (internal citations omitted).

17

MBMC asks that the Court balance the interests of the criminal investigation with MBMC's interest in keeping peer review materials completely privileged and confidential, and recognize the Missouri state law peer review privilege for purposes of this proceeding and the subpoena at issue.  There is no prohibition against doing so, and there is, in fact, a valid reason for doing so.  The Court may apply the state law peer review privilege as an exercise of its discretion under the "in the light of reason and experience" component of Rule 501.  *See KD v. U.S.*, 715 F. Supp. 2d 587, 592 (D.De. 2010) (federal trial court recognizing state law peer review privilege); *Francis v. U.S.*, 2011 WL 2224509 (S.D.N.Y. 2011) ("The Court is persuaded that a privilege protecting peer review records from disclosure in medical or dental malpractice actions would promote the interests of health care practitioners, health care facilities and the public, by encouraging self-evaluation and improving the quality of care."); *Veith v. Portage County*, 2012 WL 4850197 (N.D. Ohio 2012) ("The public interest lies strongly in favor of recognizing a privilege for these materials in medical malpractice actions.").

MBMC furthers ask the Court to apply the state law peer review privilege out of comity and consideration of the law of the state in which the case arises.  "A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058,1061 (7th Cir. 1981); *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y 1976); *Moorhead* v. *Lane*, 125 F.R.D. 680, 683 (C.D. Ill. 1989).

Congress has recognized that peer review materials are sensitive and inherently confidential, and protecting that confidentiality serves an important public interest.  *U.S. v. Harris Methodist Ft. Worth*, 970 F.2d 94, 103 (5th Cir. 1992) (citing 42 U.S.C. §§ 11101(5),

11137(b), including a congressional finding of an overriding national need for confidentiality for physicians engaging in effective professional peer review).  The medical peer review process "is a *sine qua non* of adequate hospital care."  *Id*. (quoting *Bredice v. Doctors Hosp.*, 50 F.R.D. 249, 250 (1970)).  Because the court in *Harris Methodist* affirmed the district court's determination that the proposed search exceeded bounds of reasonableness, it was not necessary to define the scope of any applicable privilege.  *Id*.

The Supreme Court of Missouri also recognizes the sacrosanct nature of the peer review privilege amongst healthcare providers, explaining that:

> The peer review privilege is designed to encourage health care professional to engage in candid, critical analysis of their peers' performance by shielding participants from liability for their comments during peer review and by ensuring that their disclosure cannot be compelled.  The harm to participants in peer review occasioned by disclosure of privileged analysis cannot be remedied by appeal Accordingly, prohibition is appropriate to prevent such a disclosure.

*State ex rel. Lester E. Cox Medical Centers v. Darnold*, 944 S.W.2d 213, 215 (Mo. 1997).

Many of the government's requests seek privileged peer review materials.  See Objections above.  Paragraph No. 6 specifically calls for peer review materials, and Paragraph Nos. 2-5, and 7 may also encompass peer review materials.  The privileged and confidential peer review process is critical to providing safe, high-quality healthcare, and must be protected accordingly.  Failure to uphold the peer review privilege has a chilling effect on the frank discussions among healthcare providers necessary to regulate the quality of care and professionalism within the medical community.  MBMC asks the Court to balance the government's investigative needs, which can be satisfied through other sources, against the need to protect the sanctity of the peer review privilege.  In the event the Court orders the production of any peer review material, the Court should require the government to narrowly tailor the scope

of its request to the scope of the investigation and strictly limit the scope solely to those documents dealing with Dr. Ali's patient billing practices and prescribing practices.

For the reasons set forth above, MBMC asks the Court to exclude from the scope of the subpoena any peer review materials, including meeting minutes, correspondence, credentialing documents related to any peer review activity, and other peer review materials concerning Dr. Ali.

<u>Attorney-Client Privilege, Work Product, and Insurer-Insured Privilege</u>

"In Missouri, the attorney-client privilege has been statutorily codified, Mo. Rev. Stat. § 491.060(3), and the privilege protects any professionally-oriented communication between attorney and client regardless of whether it is made in anticipation of litigation or for preparation for trial." *Pemberton v. Republic Servs.*, 308 F.R.D. 195, 200 (E.D. Mo. 2015) (internal citations and quotations omitted). "All such communications and materials subject to the attorney-client privilege are not discoverable; even if the opposing party can show a substantial need for them and establish that it would suffer undue hardship in acquiring their substantial equivalent." *Id*.

"The work product doctrine is broader than the attorney-client privilege because its protections extend beyond communications between the attorney and client." *Id*. at 201. "The doctrine extends to notes, memoranda, interviews, and other materials, regardless of whether they were created by an attorney or by an agent for the attorney." *Id*. The doctrine also protects the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Hickman v. Taylor*, 329 U.S. 495, 511, (1947); see also *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) (attorney's opinion work product enjoys nearly absolute immunity and can be discovered in very rare and extraordinary circumstances). The anticipation-of-litigation analysis related to the work-product doctrine applies to insurance companies and self-insured

entities equally.  See *Moe v. Sys. Transp., Inc*., 270 F.R.D. 613, 624 n. 7 (D. Mont. 2010) (citing *Equal Employment Opportunity Commission v. Safeway Store, Inc*., 2002 U.S. Dist. 2002 WL 31947153, \*5 (N.D. Cal. 2002) (applying federal law on the work-product doctrine).  *Id*. at 622.

Finally, a federal court has recognized and enforced the insurer-insured privilege in a case where a hospital invoked the privilege to prevent the disclosure of confidential risk management and patient safety documents.  *See Thompson v. United States*, No. 18-CV-1520-NJR, 2020 U.S. Dist. LEXIS 122039 (S.D. Ill. July 13, 2020).  Some of the government's requests potentially seek attorney-client and other privileged materials.  See Objections above.  MBMC asks the Court to exclude from the scope of the subpoenas any documents that fall under the above privileges.

<u>Protective Order</u>

MBMC asks the Court to enter a protective order setting aside the subpoena in its entirety, or in the alternative, limiting the scope of the subpoena as set forth above and in MBMC's Motion to Quash.  The burden associated with added time and expense required to gather and produce more documents than necessary is inherent in the scope objections. MBMC addressed above the harmful chilling effect on the peer review process that would occur without a Protective Order.  MBMC also asked the Court to enter a Protective Order limiting the disclosure of PHI to de-identified information because the government has not demonstrated that de-identified information cannot reasonably be used.

In addition, any documents the Court should order produced should be subject to a protective order limiting their disclosure and use solely to the government and persons necessary to the administrative investigation and not to any other person or entity or for any other purpose, prohibiting the use or disclosure of the documents outside of the reason they were requested, and

requiring the return or destruction of the documents upon its conclusion.  This should include not only the HIPAA protected information discussed above, but also any contracts or other agreements responsive to Paragraph No. 1, and the Court should order redaction of financial information that may be contained in such documents that is irrelevant to the government's investigation of Dr. Ali.

This Court has broad discretion to issue a Protective Order, and there is no drawback to doing so here, at least as a first step. If, after initial disclosure, the Government identifies a legitimate need for redacted information, it could petition the Court to modify the Protective Order.

## **CONCLUSION**

WHEREFORE, MBMC respectfully requests that the Court quash or modify the administrative subpoena at issue, for a protective order, and for such other relief as it deems to be appropriate under the circumstances.

BAKER STERCHI COWDEN & RICE LLC

By:___/s/ John F. Mahon, Jr._____
  John F. Mahon, Jr., #56691
  Terrence J. O'Toole, Jr., #60446
  100 North Broadway, 21st Floor
  St. Louis, Missouri 63102
  (314) 345-5000
  (314) 345-5055 Fax
  jmahon@bakersterchi.com
  totoole@bakersterchi.com

ATTORNEYS FOR MISSOURI BAPTIST
MEDICAL CENTER

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of October, 2022, I electronically filed the foregoing with the CM/ECF electronic filing system, which sent notification of such filing to all counsel of record.  I further certify that I signed, or caused my electronic signature to be placed upon, the original of the foregoing document.


Dorothy L. McMurtry
Assistant U.S. Attorney
U.S. Attorney's Office
111 South 10th Street
St. Louis, Missouri 63102
dorothy.mcmurtry@usdoj.gov
314-539-6813  office


/s/ John F. Mahon, Jr.

23