**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MISSOURI BAPTIST MEDICAL CENTER, | ) ) ) | |
| Movant, | ) ) | |
| | ) | No. 4:22-MC-871 RLW |
| v. | ) ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Missouri Baptist Medical Center's ("MBMC") "Motion to Quash or Modify and for Entry of a Protective Order." (ECF No. 4). The motion is denied for the reasons below.

**I.      Procedural History**

On February 13, 2020, a federal grand jury in the Eastern District of Missouri indicted Dr. Asim Ali and 10 other defendants in a 40-count indictment ("Indictment"). Subsequently, on April 27, 2022, a federal grand jury returned a 44-count superseding indictment ("Superseding Indictment"). The charges against Dr. Ali remained the same. Dr. Ali is charged in Count 1 of the Superseding Indictment with conspiring to defraud and commit offenses against the United States in violation of 18 U.S.C. § 371; in Counts 2-10 with prescribing controlled substance medications in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; in Counts 11-20 with obtaining controlled substance medications in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2; in Counts 21-26 with paying illegal kickbacks in violation of 42 U.S.C. § 1320a-7(b)(2)(B) and 18 U.S.C. § 2; and in Counts 36-43 with executing a health care fraud scheme in violation of 18 U.S.C. § 1347.

On or about September 12, 2022, pursuant to 18 U.S.C. § 3486, the United States Department of Justice ("DOJ"), acting through the United States Attorney's Office for the Eastern District of Missouri ("USAO"), issued an administrative subpoena ("Subpoena") to MBMC. (ECF No. 4-1). The Subpoena related to an ongoing criminal investigation of the offenses charged in the Indictment and into allegations that Dr. Ali engaged in criminal activity with persons and businesses not charged or referenced in the Superseding Indictment.

After service of the Subpoena on September 15, 2022, counsel for the Government and counsel for MBMC communicated concerning the Subpoena. (ECF No. 4-2). Counsel for MBMC did not request any modification of the Subpoena or accommodation as to the time for production, but instead indicated that MBMC would not produce the requested documents without a court order.

On October 26, 2022, MBMC filed its Motion, wherein MBMC objected to the "Instructions" section of the Subpoena and each of the eight categories of documents sought by the Subpoena. (ECF No. 4-5 at 2-7). In its Motion, MBMC makes almost identical objections to each category of documents sought by the Subpoena. MBMC argues that the requests are "vague and overbroad, unduly burdensome, violative of Fourth Amendment guarantees, seeks confidential patient information protected from disclosure under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and privileged information protected by the Missouri Peer Review Privilege (§ 537.035 RSMo.), the attorney-client privilege, the insured-insurer privilege, and/or any other applicable privileges and exemptions." *Id.* On November 21, 2022, the Government responded in opposition to the Motion. (ECF No. 10). On December 1, 2022, MBMC filed its reply. (ECF No. 12).

As set forth below, the Court finds that the Subpoena does not violate the constitutional rights of MBCM, does not seek information privileged under federal law, and complies with the requirements of 18 U.S.C. §3486.

## II.   Statutory Authority to Issue Section 3486 administrative Subpoenas

The Health Insurance Portability and Accountability Act ("HIPAA") gives the DOJ the authority to issue administrative subpoenas in specified types of criminal investigations. 18 U.S.C. § 3486. Section 3486 provides, in relevant part:

> (a) Authorization.—
> (1) (A) In any investigation of—
>> (i) (I) a Federal health care offense . . . the Attorney General . . . may issue in writing and cause to be served a subpoena requiring the production and testimony described in subparagraph (B).
>
> (B) Except as provided in subparagraph (C), a subpoena issued under subparagraph (A) may require—
>> (i) the production of any records or other things relevant to the investigation; and
>> (ii) testimony by the custodian of the things required to be produced concerning the production and authenticity of those things.

Under this statute, the Attorney General and his designees may issue administrative subpoenas to obtain records that may be relevant to the investigation of a federal health care offense. The DOJ issued the Subpoena to MBMC under this statutory authority.

## III.   Limitations on Use of Section 3486 Administrative Subpoenas

Section 3486 administrative subpoenas differ from federal grand jury subpoenas in several respects. Section 3486 administrative subpoenas may only be issued in investigations concerning the limited universe of federal criminal offenses identified in Section 3486(a)(1)(A) (federal health care offense, federal offense involving the exploitation or abuse of children, unregistered sex offender, threat offenses in violation of section 871, 879 or against a person protected by the United

States Secret Service). Section 3486 may be used to subpoena documents or to subpoena the testimony of document custodians concerning the production and authentication of such records or documents. Section 3486 administrative subpoenas may not otherwise be used to obtain testimony.

The site designated for the production of the subpoenaed records may not be more than 500 miles from the place where the Section 3486 administrative subpoena was served. 18 U.S.C. § 3486(a)(3). The administrative subpoena must grant the person or entity a reasonable period of time to comply. Unlike in the grand jury context, the DOJ cannot issue a forthwith administrative subpoena requiring immediate production of documents. Although different from grand jury subpoenas, administrative subpoenas are in some respects analogous to grand jury subpoenas due to their functional similarity as an evidence-gathering tool. *See Resolution Trust Corporation v. Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994) (observing that an administrative agency's subpoena power is analogous to that of a grand jury).

Congress enacted Section 3486 to facilitate health care fraud enforcement efforts after estimating that the health care dollars lost to fraud could be as high as ten percent of total health care costs. *In re Subpoena Duces Tecum*, 228 F.3d 341, 346 n.1 (4th Cir. 2000) (denying motion to quash health care fraud subpoena after rejecting recipient's constitutional arguments). Similar to 21 U.S.C. § 876 (providing the Attorney General with subpoena power to investigate potential violations of the Controlled Substances Act) and 5 U.S.C.A. App. 3 § 3 (providing the Inspector General with subpoena power to investigate fraud and abuse in the Medicare program), Section 3486 provides ample legal authority for the issuance of the subpoenas. As is clear from the statutory history, the DOJ's subpoena power when investigating health care fraud was meant to be broad. *See*, *e.g.*, *Doe v. United States*, 253 F.3d 256, 267 (6th Cir. 2001) ("[I]t appears clear,

4

both from the language of the statute and from Congress's intent in enacting HIPAA, that the DOJ's subpoena power in investigating federal health care offenses is meant to be broad.").

### IV.   Delegation of Authority to Issue Section 3486 Administrative Subpoenas

On August 13, 2001, the Attorney General delegated to each United States Attorney the authority to issue administrative subpoenas pursuant to 18 U.S.C. § 3486, as well as authorizing each United States Attorney to re-delegate this authority to individual Assistant United States Attorneys (AUSAs). Government counsel in the present matter has been delegated authority to issue subpoenas under 18 U.S.C. § 3486. (ECF No. 10 at 8).

### V.   Standards for Enforcement of an Administrative Subpoena

A federal agency's administrative subpoena should be enforced if (1) the subpoena was issued pursuant to lawful authority, (2) the subpoena was issued for a lawful purpose, (3) the subpoena requests information which is relevant to the lawful purpose, and (4) the disclosure sought is not unreasonable. *Fresenius Medical Care v. United States*, 526 F.3d 372, 375-6 (8th Cir. 2008) (motion to quash Section 3486 subpoena denied); *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 226 (8th Cir. 1984) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). The test for enforcement is not a stringent one. "Subpoena enforcement proceedings are not intended to be exhaustive inquisitions into the practices of regulatory agencies," but instead are designed to produce a "speedy resolution" of the issues. *United States v. Medic House, Inc.*, 736 F. Supp. 1531, 1538 (W. D. Mo. 1989) (citations omitted) (administrative subpoena issued by U.S. Department of Health and Human Services).

Once the agency (in this case, the DOJ) satisfies the four factors, the burden then shifts to the party seeking to quash the subpoena to demonstrate that "judicial enforcement of the subpoena would amount to an abuse of the Court's process." *E.E.O.C. v. Peat, Marwick, Mitchell & Co.*,

5

775 F.2d 928, 930-31 (8th Cir.), *cert. denied*, 475 U.S. 1046 (1986). Demonstrating that enforcement would amount to an "abuse of the Court's process" is a "heavy burden" to bear. *Medic House, Inc.*, 736 F. Supp. at 1536. Here, as more fully discussed below, the Government has made a sufficient showing as to each of these four factors, and further, MBMC has failed to demonstrate that enforcement of the Subpoena would amount to an abuse of the Court's process.

### A.    The DOJ Had Lawful Authority to Issue the Subpoena.

Section 3486 provides the Attorney General with subpoena power to investigate "a Federal health care offense." 18 U.S.C. § 3486(a). In the present case, the DOJ issued the Subpoena under authority of the Attorney General (ECF No. 10 at 8) as part of a health care fraud investigation of Dr. Ali. MBMC does not contend that the DOJ lacked lawful authority to issue the Subpoena. As MBMC appears to concede, the Government has satisfied the first factor of the analysis.

### B.    The DOJ Issued the Subpoena for a Lawful Purpose.

"So long as the agency makes a 'plausible' argument in support of its assertion of jurisdiction, a district court must enforce the subpoena if the information sought there is not 'plainly incompetent or irrelevant to any lawful purpose' of the agency." *E.E.O.C. v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991). Those seeking to quash a Section 3486 subpoena bear a "heavy burden to disprove the existence of a valid purpose for an administrative subpoena." *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (citations omitted).

In the instant case, the DOJ is investigating allegations that Dr. Ali participated in a multi-year health care fraud conspiracy and scheme involving a number of individuals and health care businesses. (ECF No. 10 at 11). As discussed below, the Subpoena seeks documents that clearly advance the ongoing investigation of Dr. Ali. The Government has satisfied the second factor.

## C.   The Subpoena Seeks Relevant Information.

MBMC asserts that the Subpoena seeks evidence that is not relevant to the DOJ's investigation of Dr. Ali and on this basis alone should be quashed. MBMC's definition of "relevance," however, is too narrow and is inconsistent with case law describing the relevance requirement for subpoenas. A subpoena seeks relevant information if the materials sought are "reasonably relevant" to the agency's inquiry. *Morton Salt*, 338 U.S. at 652. "For purposes of an administrative subpoena, the notion of relevancy is a broad one. An agency can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not. So long as the material touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." *E.E.O.C. v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) (internal citations and quotation marks omitted).

In *Whispering Oaks,* the Eighth Circuit recognized that relevance, when considering a Section 3486 administrative subpoena, should be broadly defined. The Court stated: "The Government, with its subpoena power, 'does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" *Whispering Oaks,* 673 F.3d at 817, *(*quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950)). Other courts have also recognized that Section 3486 grants the government "broad subpoena power." *Doe*, 253 F.3d at 265-66 (noting the "broad subpoena power that the statute gives to the Attorney General and her designees"); *United States v. Lazar,* No. 04-20017-DV, 2006 WL 3761803, at *10 (W.D. Tenn. Dec. 20, 2006) (noting that "§ 3486 entrusts the government with broad subpoena powers").

As the Sixth Circuit stated in *Doe*, "it appears clear, both from the language of the statute and from Congress's intent in enacting HIPAA, that the DOJ's subpoena power in investigating

federal health care offenses is meant to be broad." 253 F.3d at 267. "Section 3486 authorizes the Attorney General or her designee to subpoena any records 'which *may be relevant*' to an authorized investigation, thus illustrating the substantial scope of the subpoena power Congress intended to give to the Attorney General." *Id*. (emphasis original) (citations omitted).

"Aside from the statutory language, other evidence of Congress's intent to grant the Attorney General a broad subpoena power can be found in HIPAA's legislative history. One of the main legislative purposes of HIPAA was to prevent health care fraud and abuse." *Id*. (citations to legislative history omitted). The standard for determining the relevance of a subpoena's requests is not particularly burdensome, and indeed, a subpoena "should be enforced when the evidence sought by the subpoena is not plainly incompetent or irrelevant to any lawful purpose of the agency in the discharge of its duties." *Whispering Oaks,* 673 F.3d at 817 (quoting *Doe*, 253 F.3d at 266).

"The language of § 3486 indicates that the question of an administrative subpoena's relevance is not a question of evidentiary relevance." *Whispering Oaks*, 673 F.3d at 818, (*citing Doe*, 253 F.3d at 266). The question is simply "whether the documents requested pursuant to the subpoena are relevant to the health care fraud investigation being undertaken." *Id*. In other words, subpoenas are not limited to seeking documents that would be admissible in judicial or administrative proceedings.

In considering the relevance of the Subpoena, this Court must view the Subpoena in the context of the investigation from which it arose. Here, as the Government indicated in its responsive pleading, the DOJ is investigating allegations that Dr. Ali, "acting in concert with others, illegally pre-signed prescriptions for controlled substance medications for patients without determining if the medications were medically necessary; obtained or assisted others to obtain controlled substance medications by fraud, deception, or subterfuge; created or used false and

fraudulent documents to obtain reimbursement from patients and insurers for prescription medications and clinical laboratory tests; or offered, solicited, paid, or received illegal kickbacks." (ECF No. 10 at 11).

In its responsive pleading, the Government outlined the relevance of each of the eight document requests. *Id*. at 11-15. The Government indicates that the requested documents are relevant to vital aspects of the health care fraud conduct under investigation, including Dr. Ali's motives, his professional and financial relationship with MBMC, the methods and amounts of his compensation from MBMC, complaints raised against Dr. Ali by patients and hospital staff and employees, Dr. Ali's knowledge of and participation in the billing process, specific instances or a pattern where Dr. Ali billed inappropriately or fraudulently, and instances where the care provided by Dr. Ali was medically unnecessary, resulted in physical and/or financial harm to patients, and was billed to patients or health care benefit programs. It is evident from the Government's explanation of the relevance of the requested documents that, far from being "plainly incompetent or irrelevant" to the underlying investigation, the requested documents readily satisfy the relevance standard necessary to enforce the Subpoena. The Government has satisfied the third prong of the analysis.

### D.    The Disclosures Sought Are Not Unreasonable.

Preliminarily, the Court notes that the paragraph F on page 4 of the Subpoena instructs MBMC to "provide a privilege log" for documents it believes are privileged. Thus, the Subpoena does not seek the production of documents covered by the attorney-client privilege or work product. (ECF. No. 4-1 at 4). Further, the Subpoena requests a limited universe of documents that directly relate to Dr. Ali's actions during a limited time frame. With these limitations, the Court finds that the Subpoena requires reasonable disclosures and compliance will not be burdensome.

9

Additionally, MBMC argues that the Subpoena is unreasonable and thus in violation of its Fourth Amendment rights. In *Donovan v. Shaw*, the Eighth Circuit stated: "The showing of reasonable cause required to support an application for enforcement of a subpoena duces tecum 'is satisfied . . . by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry.'" 668 F.2d 985, 989 (8th Cir.1982) (citations omitted). Addressing a challenge to a Section 3486 subpoena, the Fourth Circuit has stated that a subpoena, to be reasonable, "must be (1) authorized for a legitimate governmental purpose; (2) limited in scope to reasonably relate to and further its purpose; (3) sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome; and (4) not overly broad for the purposes of the inquiry as to be oppressive . . . ." *In re Subpoena Duces Tecum*, 228 F. 3d. at 349-50 (finding a Section 3486 subpoena request for thousands of patient files and controlled substance records reasonably related to investigation of doctor).

Measured by the above standards, the Subpoena is clearly reasonable. First, the DOJ issued the subpoena as part of an investigation into allegations that Dr. Ali had committed health care fraud. Second, as described above, the Subpoena is relevant because each request seeks information about Dr. Ali, the subject of the ongoing investigation. Further, the Subpoena identifies to the extent possible the categories or types of documents that may contain the requested information.

As evident from the face of the Subpoena, and as indicated by the Government in its responsive pleading, MBMC is required only to produce documents in its possession. If MBMC does not possess responsive documents, MBMC may simply indicate as much in its response to the Subpoena. As to MBMC's argument that the time frame of the requested documents is so broad

10

as to be unduly burdensome, the Court notes that the Government has limited the scope of the documents to the time frame of the conduct under investigation. "The fact that matters with respect to which discovery is sought may be time-barred by the applicable statute of limitations does not foreclose discovery," particularly because an act "beyond the period of limitations may constitute relevant background evidence in a proceeding in which a current practice is at issue." *U.S. ex rel. Roberts v. QHG of Indiana, Inc.*, No. 1:97-CV-174, 1998 WL 1756728, at *10 (N.D. Ind. Oct. 8, 1998).

Lastly, MBMC has failed to indicate why or in what way compliance with the Subpoena will be an undue burden. *See Whispering Oaks,* 673 F.3d at 819 (rejecting overbreadth objection to Section 3486 subpoena when company offered no reason why enforcement and compliance with subpoenas would be overly burdensome); *Doe*, 253 F.3d at 268–69 (enforcing administrative subpoena where individual made only "general and conclusory statements" as to undue burden of the subpoena). Given the specificity and relatively limited number of documents sought, compliance with the Subpoena by MBMC will not be unreasonably burdensome. The Government has satisfied the fourth factor of the analysis.

## VI.   MBMC's Asserted Privileges

MBMC contends that the Subpoena seeks documents that are covered by the attorney-client privilege, work product privilege, insurer-insured privilege, and the peer review privilege. Federal law, not Missouri state law, is controlling in federal criminal cases. Thus, privileges recognized by Missouri state law do not of themselves protect documents from disclosure in the Government's federal criminal investigation. Rule 501 of the Federal Rules of Evidence provides that privileges "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

As for the attorney-client privilege, where MBMC believes that requested documents are protected by the privilege, it can provide a privilege log. The Court finds that the attorney-client privilege does not provide a basis for quashing the Subpoena.

MBMC further asserts that the insurer-insured privilege provides a basis for quashing the Subpoena. MBMC cites a single case in support of its position that this Court should recognize the insurer-insured privilege and find the privilege a sufficient basis to quash the Subpoena. (ECF. No. 10 at 5) (citing *Thompson v. United States*, No. 18-CV-1520-NJR, 2020 U.S. Dist. LEXIS 122039). The Eighth Circuit, however, has previously declined to recognize an insurer-insured privilege. *Petersen v. Douglas Cnty. Bank & Tr. Co.*, 967 F.2d 1186, 1188 (8th Cir. 1992) ("KBS claimed injury to the principle of complete confidentiality between an insurer and its insured . . . the magistrate judge gave little weight to KBS's asserted interest in protecting these documents from disclosure and found that the creation and application of a confidentiality privilege under the facts of this case was inappropriate. We agree[.]" And as the Eighth Circuit has acknowledged, federal common law recognizes a privilege only in "rare situations." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997) (collecting cases rejecting claims of privilege, including accountancy privilege, insurer-insured privilege, adverse spousal testimony, qualified executive privilege, and others). In view of the significant federal interest in the DOJ's ability to engage in its important health oversight function, and the absence of a compelling showing of harm to MBMC, the Court rejects the claim of insurer-insured privilege as a basis for quashing the Subpoena.

Finally, MBMC raises the peer-review privilege as a basis for quashing the Subpoena in this matter. In 1990, the Supreme Court expressly declined to create a federal common law privilege to protect the disclosure of a university's peer review materials in an employment

discrimination action. *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990). Similarly, all Federal appellate courts to consider the issue have held that state peer review privileges do not apply in federal cases. *See*, *e.g.*, *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 293 (4th Cir. 2001); *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (declining to apply the medical peer review privilege); *Agster v. Maricopa Cnty.*, 422 F.3d 836 (9th Cir. 2005); *Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007), *cert. denied*, 552 U.S. 1131(2008).

In *Agster*, the Ninth Circuit noted that Congress had twice had the opportunity to consider the peer review privilege, and concluded that the Court was "especially reluctant to recognize a privilege in an area where it appears Congress has considered the relevant competing concerns but has not provided the privilege itself." 422 F.3d at 839 (quoting *University of Pennsylvania*, 493 U.S. at 189); s*ee also* 2022 WL 1802809 at *11 (district court declines to recognize peer review privilege as basis for quashing Section 3486 subpoena).

Although MBMC asserts that the precedent identified by the Government is distinguishable from the present case, MBMC fails to direct this Court to any decisions in which a federal appellate court has recognized the peer review privilege. In view of the compelling public interest in the prevention of health care fraud and the enforcement of the criminal prohibitions on health care fraud, this Court, like many before it, declines to recognize the applicability of the peer review privilege to the present matter.

## VII.  Privacy Interests

MBMC further seeks a protective order for any records produced in response to the Subpoena. As the moving party for the protective order, MBMC has "the burden to demonstrate good cause for issuance of the order." *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *3 (E.D. Mo. Dec. 4, 2020) (citation omitted). A court may enter a protective

order to prevent annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). To show good cause, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted." *Id.* MBMC has not identified any specific prejudice or harm that will result if the requested protective order is not granted. Moreover, this Court finds that the protections already provided under applicable statutes and regulations, discussed below, are more than sufficient to protect any privacy interest in the requested records.

In 2003, as authorized by HIPAA, the Secretary of the Department of Health and Human Services ("HHS") promulgated "Standards for Privacy of Individually Identifiable Health Information" (referred to herein as the HIPAA Privacy Rule), which generally prohibit the disclosure of individually identifiable medical information ("PHI") without the consent of the individual. 45 C.F.R. §164.512. The HIPAA Privacy Rule, however, permits disclosure of PHI in specified circumstances, including but not limited to disclosures as required by law, disclosures for "health oversight," disclosure to law enforcement agencies, and disclosure for use in judicial proceedings. For each permitted disclosure of PHI, the HIPAA Privacy Rule specifies the requirements for the disclosure.

Most relevant to MBMC's motion is 45 C.F.R. § 164.512(d), which permits the disclosure of PHI to agencies performing health oversight activities. Under this section, a covered entity[1] may disclose PHI to a health oversight agency for oversight activities authorized by law, "including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions; or other activities necessary for

---

[1] A "covered entity" is a health care provider that transmits electronic information, a health plan, and a health care clearinghouse and their business associates. The DOJ is not a covered entity.

14

appropriate oversight of (i) the health care system; (ii) Government benefit programs for which health information is relevant to beneficiary eligibility . . . ."

Contrary to MBMC's contention, the DOJ has long been recognized as a health oversight agency in connection with its investigation of alleged health care fraud. In *U.S. ex rel. Stewart v. Louisiana Clinic,* No. CIV.A. 99-1767, 2002 WL 31819130, at *9–10 (E.D. La. Dec. 12, 2002), the district court explicitly rejected the defendants' request for a protective order limiting the use of nonparty patient medical and billing records obtained by the United States in a qui tam action solely to the litigation at hand. The court in *Stewart* further rejected a request identical to one made by MBMC in the present matter, to wit, that the defendants "produce the documents only after all patient identifying information has been redacted." *Id.* at *1. In rejecting the requested protective order, the district court cited 45 C.F.R. § 164.512(d)(1) and noted that the "final rule implementing the Standards specifically names the Department of Justice as a health oversight agency with respect to its conduct of oversight activities relating to the health care system and its civil rights enforcement activities." *Id.* at *9 (citing 65 Fed.Reg. 82462, 82492 (Dec. 28, 2000)). The district court then held that the regulations permitting the disclosure of unredacted information to health oversight agencies, such as the DOJ . . . were 'clear and unambiguous, and . . . wholly undermine defendants' arguments to the contrary." *Id.* at *10.

Similarly, in *U.S. ex rel. Kaplan v. Metro. Ambulance & First-Aid Corp.*, 395 F. Supp. 2d 1, 5 (E.D.N.Y. 2005), the district court, rejecting a requested protective order, observed that "[t]he United States Department of Justice is a health oversight agency as defined in this regulation." Noting the DOJ's role as a health oversight agency, the *Kaplan* court held that "the protective order may not restrict the government's use of confidential patient medical records solely to purposes of this litigation." *See also* 2022 WL 1802809 at *11-12 (expressly holding that DOJ is

a health oversight agency when investigating health care fraud and rejecting MBMC's and MBMH's request for order restricting government's use of subpoenaed documents).

Section 164.512(e)(1)(ii), cited by MBMC, is not applicable to administrative subpoenas issued by DOJ in its health oversight role. Section 164.512(e) entitled "Standard: Disclosures for judicial and administrative proceedings," provides that a covered entity may disclose protected health information in the course of any judicial or administrative proceeding in response to an order of a court or administrative tribunal, a subpoena, discovery request, or other lawful process if the covered entity receives satisfactory assurance that notice has been given to the patient or reasonable efforts have been made to obtain a qualified protective order. 45 C.F.R. § 164.512(e)(1). But Section 164.512(e)(2) states that "[t]he provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information." Thus, Section 164.512(e)(1)(ii) does not enlarge the requirements for disclosure authorized under Section 164.512(d) for health oversight activities and a covered entity is permitted to disclose de-identified information to DOJ, when DOJ is carrying out health oversight activities. *See* 2022 WL 1802809 at *13 (rejecting MBMC and MBMH's request that MBMC and MBMH only be required to produce documents with all patient-identifying information removed). For these reasons, MBMC's motion for a protective order is denied.

Finally, seeks an order requiring the return or destruction of the documents upon the conclusion of the investigation. The Government has indicated in its responsive pleading that the Government will return any original documents when the investigation, any possible prosecution, and related post-conviction proceedings are completed. For these reasons, MBMC's request for an order requiring return or destruction of documents is denied as moot.

16

Accordingly,

**IT IS HEREBY ORDERED** that Missouri Baptist Medical Center's "Motion to Quash or Modify and for Entry of a Protective Order is **DENIED** in its entirety. (ECF No. 4).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall close this miscellaneous matter.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 19th day of January, 2023.